This case presents a rather simple question of fact which was decided in favor of the plaintiff by the trial judge and after reading the testimony we are convinced that the judgment is correct and that it should be affirmed.
On January 6, 1937, Leon J. Patenotte Son, the defendants in the present proceeding, obtained a judgment against Mrs. Annie J. Ferris, Sr. and Mrs. Annie J. Ferris, Jr., in solido, in the City Court of Hammond, for the sum of $155 with eight per cent interest from June 4, 1935, and fifteen per cent of the total amount as attorneys fees, as well as all costs involved in the suit. The award decreed in the judgment was recognized as being secured by the lien and privilege accorded to the vendors of building material and as operating against a dwelling house owned by the defendant, Mrs. Annie J. Ferris, Jr., and the acre of ground on which it was situated, being a part of a larger tract that is described as being in the Seventh Ward of Tangipahoa Parish. As appears from the judgment, copy of which is found in the record before us, the defendants were granted a stay of execution until May 15, 1937, in accordance with the order of the Debt Moratorium Commissioner of the State of Louisiana. As further appears from the copy of said judgment the same was duly recorded in the mortgage records of the Parish of Tangipahoa.
The plaintiff in this proceeding, Mrs. Annie Ferris, it not being stated whether she is Mrs. Annie Ferris Sr., or Mrs. Annie Ferris, Jr., but nevertheless one of the judgment debtors of L.J. Patenotte Son under the judgment referred to, and who we take to be Mrs. Annie Ferris, Jr., claims that between the date it was rendered and the date on which it would become executory, she entered into an agreement with the judgment creditors under which they waived all interest and costs of court and accepted the sum of $155 in full satisfaction, the said sum to be paid in two payments, one of $75 at the time the agreement was entered into and the other of $80 on December 1, 1937. The sum of $75 was paid, as agreed to, and when she went to pay the $80 at the time that payment became due, the same was refused. Accordingly she has instituted the present proceeding in the form of a rule in which she was permitted to deposit the sum of $80 in the registry of the court and prays that the clerk and ex-officio recorder of mortgages of the Parish, and L.J. Patenotte Son be ordered to appear in court to show cause why the judgment recorded against her should not be decreed to have been paid and the same ordered cancelled and erased from the mortgage records of the Parish of Tangipahoa.
A rule nisi was issued and the defendants, in answer thereto, appeared and filed their answer which may be said to constitute a general denial, their contention being that an agreement or compromise such as plaintiff alleges was never entered into.
Three witnesses appeared on behalf of the plaintiff in rule, J.H. Dickinson, District Supervisor for financial adjustments of the Farm Securities Administration, hereafter referred to as the F.S.A., Alden Addison, a member of the Farm Debt Adjustment Committee of the said F.S.A. for the Parish of Tangipahoa and H.B. Staples, former supervisor of the F.S.A. for that Parish.
The substance of Mr. Dickinson's and Mr. Addison's testimony is that they together went to see Mr. L.J. Patenotte about entering into some form of settlement of the Ferris judgment because they wanted to make Mrs. Ferris some advances but could not do so as long as the judgment which he held against her remained of record on the mortgage records of the Parish. They fix the time of this meeting as during the month of May, 1937. Both of them positively state that Patenotte was agreeable to settling on the basis of payment of the amount of the principal of the judgment and that the only thing that seemed to hold him back was that he wanted to know that it would be agreeable to his attorney. If his attorney consented, he was then to contact Mr. Staples who would issue the checks in payment of the judgment under the agreement. Both of these gentlemen testified that the payment of the $75 which was made, and which is admitted, would never have been made except for the agreement which had been entered into.
Mr. Staples' testimony is that as supervisor of the F.S.A. at the time that this judgment existed against Mr. Ferris, he had Mr. Addison and Mr. Dickinson contact *Page 500 
Mr. Patenotte with the idea of obtaining some form of settlement and they later reported to him that an agreement had been reached. He then called Mr. Patenotte over the phone and the latter conveyed the information which these gentlemen had given him and definitely told him that he had agreed to accept $155 in full settlement of the judgment with the understanding that he was to be paid $75 at the time and $80 in December. The way the F.S.A. carried their client's bank accounts was to deposit the money in the joint name of the F.S.A. and the client, and accordingly he wrote a check for $75 signed by himself and Mrs. Ferris on that joint account and sent it to Mr. Patenotte. He says definitely that he would not have sent that check unless there had been the agreement as he understood it because this money was in the form of a loan for her to make her crops and their agreement with her was that they would not advance her unless the judgment had been cleared.
The defendants offered the testimony of Mr. L.J. Patenotte and John Patenotte, his son and partner in business, and also of L.H. Penny, who worked in their office. Penny's testimony is of little value and evidently he was produced to refute a statement by Dickinson and Addison to the effect that when they were in Patenotte's office there was a young lady stenographer present. He tried to disprove this fact by saying that there was no young girl employed as stenographer in the office except during the rush of the berry season. Rather significantly however, in substantiation of the statement, it appears that the visit of these two gentlemen was made about May 10th, when the berry season was in progress. The testimony of John Patenotte is not of any assistance whatsoever, as the only thing he says is that he never authorized the cancellation of the judgment on the terms claimed, but admits that his father had authority to compromise the judgment if he cared to without any authorization on his part. L.J. Patenotte stands on his denial of the agreement and even goes so far as to deny that Dickinson and Addison ever called at his office, a fact which is, however, clearly proven and which in effect is corroborated by his own attorney, Mr. A.W. Spiller, since Mr. Spiller testified that he did call him over the telephone and stated to him that someone representing the F.S.A. was trying to have the Ferris judgment cancelled. Mr. Spiller's testimony moreover indicated that he told Mr. Patenotte in that conversation that the matter of remitting any part of the judgment was up to him and that it was his right to do so if he cared to but that he would expect payment of his fees. Of course this is immaterial on the point of the agreement that was reached with Mr. Patenotte which seems to us to have been confected by his acceptance of the payment of $75 at the time he did.
If the testimony of the witnesses in this case is to be weighed by any interest they may have in the matter, certainly the interest of Mr. Patenotte is to be so taken into consideration as against that of Mr. Dickinson, Mr. Addison and Mr. Staples, who have no financial interest whatever themselves, and who we understand from the record are rather substantial citizens of Tangipahoa Parish. It would be difficult indeed, for any court to discard the testimony which they have given in support of the compromise entered into and to accept, instead, that of Mr. Patenotte, exclusively, the only person who would be benefited by being released from the agreement.
Counsel for the defendants states in his brief that there is a serious question regarding the admissibility of all the oral testimony that was adduced in the case as it is testimony relating to a compromise, and as such, not admissible under Civil Code Article 3071. It seems rather late for him to raise that question as all the testimony was admitted without any objection on his part, and in the absence of any such objection or of a bill of exception, the matter is one which cannot be considered at this time. Moreover, we doubt very much whether the article in question is applicable to testimony relative to the settlement of a judgment after the termination of a law suit as it seems to have reference to a compromise or an agreement for the purpose of "preventing or putting an end to a law suit."
The judgment appealed from is correct and it is accordingly affirmed at the costs of the defendants, appellants herein. *Page 501